BRIDGET CAMPBELL & another *vs.* CHARLES C. COOK.

Bristol.    October 23, 1906. — November 27, 1906.

Present: KNOWLTON, C. J., MORTON, HAMMOND, BRALEY, & RUGG, JJ.

*Equity Jurisdiction*, Accounting, Discovery.    *Trust.    Agency.    Equity Pleading and Practice*, Appeal.

Where the owners of improved real estate appoint an agent to manage the property under an irrevocable power for a term of years, accounting to them for the rents after retaining in his discretion such sums as may be required for the disbursements enumerated in the instrument of appointment, a fiduciary relation is created which entitles the owners of the real estate to an accounting in equity.

In a suit in equity by the owners of improved real estate against an agent appointed by them to manage the property under an irrevocable power for a term of years, accounting to them for the rents after retaining in his discretion such sums as might be required for the disbursements enumerated in the instrument of appointment, for an accounting, and seeking discovery as to the amount of insurance procured and placed by the defendant on each parcel of real estate, giving the rates paid and the names of the companies which issued the policies, the judge found that the insurance companies were solvent and declined to order the defendant to disclose their names or to give further information concerning the insurance. *Held*, that the plaintiffs were entitled to a full discovery to ascertain whether the disbursements charged by the defendant actually had been made, including the names of the companies and the premiums paid for insurance to companies of which the defendant was the local agent in which it appeared that so far as possible he had placed the insurance. *Held, also*, that the judge's finding of financial soundness did not involve a finding that the defendant was not obliged to account further by stating the names of the companies, and that the refusal to order a disclosure of the names was a ruling of law, which on appeal could be reversed.

BILL IN EQUITY, filed February 3, 1906, by Bridget Campbell and Sarah Campbell Lima, the owners in common, with one

Margaret A. O'Connor, of certain parcels of improved real estate in the city of Fall River composing the John Campbell estate, alleging that on April 10, 1905, the plaintiffs and O'Connor appointed the defendant their agent and attorney to manage and control the property in question for the term of five years, for a compensation of $25 per month, that the defendant agreed to act as agent in the management of the property for the term of five years, to act faithfully in the agency and to render an account to each of the owners separately in each and every month, that the defendant rendered an account each month to each of the owners, but an incomplete one, that on January 23, 1906, and on divers other days, the plaintiffs requested the defendant to render a more complete account and to exhibit to the plaintiffs or their attorney the items contained in certain bills enumerated which were charged against the estate and paid with money out of the estate, that the plaintiffs requested further that the defendant should state what insurance he had procured for the estate during his agency, from whom he procured such insurance, how much of such insurance of every kind and description was carried by each piece of property in the estate and at what rate, and that the defendant refused to comply with either of these requests; praying that the defendant be compelled to render an account to the plaintiffs, 1, of the items contained in the bills enumerated, 2, of the amounts of insurance carried by each parcel of the properties of the John Campbell estate, the rate paid for such insurance and the names of the companies in which such insurance is carried, whether it be fire or any other kind of insurance, 3, for a subpoena, and 4, for further relief.

The power of attorney and agreement referred to in the bill was as follows:

"This agreement made this tenth day of April, 1905, by and between Bridget Campbell, Sarah Campbell Lima, and Margaret A. O'Connor, all of Fall River, County of Bristol, State of Massachusetts, widow and children of John Campbell, late of said Fall River, deceased, parties of the first part, and Charles C. Cook of said Fall River, party of the second part,

"Witnesseth, that in consideration of the signing of these

presents by the respective parties, said parties of the first part hereby jointly and severally covenant and agree with the said party of the second part and also severally covenant and agree with each other as follows :

" 1. That they will constitute and appoint, and they do hereby constitute the said Charles C. Cook to be the true and lawful attorney irrevocable of them and each of them for the term of five years from this date, to manage and control, as their agent and attorney and in their names and for their use and benefit, all the real estate belonging to them jointly situated in Fall River and devised to them under and by the will of the said John Campbell, deceased, together with all buildings thereon, with full power to let and rent, and with the approval of a majority of them, to lease for a term not exceeding five years said real estate or any portion thereof or any buildings, stores or tenements thereon, and to collect all moneys due to them or each of them from tenants of said real estate whether as rent or for use and occupation of any part thereof, or of any building, tenement, or store thereon, and to give in our names receipt and acquittance therefor ; also to make, and out of the moneys so received to pay for, all proper repairs upon and about said property, and to keep the buildings insured in our name against fire, explosion and casualties, and to pay for the same out of the said receipts ; also out of said moneys so received, to pay all taxes, water rates and assessments levied or assessed upon said property, and to pay the interest upon all mortgages on said property and such instalments of the principal of said mortgages as may be from time to time required by the mortgagees ; also to account to each of us monthly under this power of attorney and to pay to each one of us one-third of the moneys so received, after deducting and holding sufficient thereof to meet the disbursements hereinbefore provided for, together with such further sum as may be agreed upon in writing between them or a majority of them and said attorney as compensation for his services hereunder.

"And for the consideration aforesaid the Charles C. Cook, party of the second part, hereby covenants and agrees with the parties of the first part, to act as said agent and attorney in the management and control of said property as aforesaid for and during said term of five years for such sum as compensation

for his services as shall be agreed upon in writing by and between him and the parties of the first part, or a majority of them.

"And the parties of the first part hereby grant and confirm unto said attorney full power and authority in their names to begin and defend legal proceedings for the purpose of collecting said moneys, terminating tenancies, ejecting tenants from the property, and defending and preserving their rights and interests therein, and generally to do and perform any act or thing in and concerning the premises aforesaid as fully and effectually as they or either of them might do if personally present.

"In witness whereof we hereto set our hands and seals this tenth day of April, 1905.

Her

"Bridget X Campbell.

Mark

Sarah Campbell Lima.

Margaret A. O'Connor.

Charles C. Cook."

Here followed the signature of a witness.

The following is a copy of the contents of a letter sent by the counsel for the defendant to the counsel for the plaintiffs:

"Mr. Cook declines to accede to the request contained in your letter to me of Jan. 23, 1906, for the reason that he has not only submitted for the inspection of yourself and Mr. Coughlin his books, his checks, and the original receipted bills, but has also submitted to your clients every month a statement giving the names of every party paid and the date and amount of every payment. If upon inquiry of any of the persons named or any other person who knows anything about the work done or materials furnished there appears to you to be anything wrong in regard to any bill, I will submit the matter to Mr. Cook for explanation; if he does not satisfactorily explain it you will of course be at liberty to take any action that you think best for the interests of your client.

"As to the insurance Mr. Cook says that he has already submitted to you the gross amount of insurance carried on the property and the premiums paid; but he is willing, if you care to do so, to allow one of the leading insurance agents of the city, —

L. N. Slade, W. B. M. Chace, Geo. N. Durfee or Chester W. Green, to examine at your expense the insurance that he is carrying on each building, and the rates he is paying therefor; provided such examiner is to certify to you and to him whether or not the amount carried on each building is for a proper amount, and at the regular rate established by the insurance companies of Fall River, but not to disclose the names of the companies with which the insurance is made as Mr. Cook considers that his own private affair."

A judge of the Superior Court made the following decree:

" This case came on to be heard at the June sitting of the Superior Court in New Bedford in 1906. The court heard the evidence of the parties which was both oral and written. The case was argued by counsel. It appeared to the court from the whole evidence that the plaintiffs prior to bringing the suit had ample opportunity to examine all the itemized bills in detail, and that the names of the insurance companies were immaterial as long as they were sound companies; and thereupon, upon consideration thereof, it is

" Ordered, adjudged and decreed that the defendant render to each of the plaintiffs a detailed statement of all insurance upon each piece of property belonging to the plaintiffs under the defendant's control and charge, including the premiums paid therefor from April 10, 1905, to June 11, 1906, save and except the names of the companies. No costs to be allowed to either party."

The plaintiffs appealed " from the decree of the court in refusing to order the defendant to render to the petitioners the names of the insurance companies in which the defendant carries the insurance upon the property belonging to the plaintiffs and of which he, the defendant, is their agent."

*D. R. Radovsky*, for the plaintiffs.

*A. J. Jennings*, for the defendant.

BRALEY, J.    Under the agreement between the parties the defendant while authorized to act as their agent also was given an irrevocable power for a term of five years to manage their property consisting of improved real estate, accounting to each of the plaintiffs for one third of the rents, after retaining in his discretion such sums as might be required for the disbursements

enumerated in the instrument. The bare relation of principal and agent may be insufficient to maintain a bill in equity by the principal for an accounting unless the account is so complicated that it cannot conveniently be stated or settled at law, but the fiduciary character of the relations created by this agreement constituted the defendant, who has accepted the appointment, a trustee. R. L. c. 159, § 3, cl. 6. *Badger* v. *McNamara*, 123 Mass. 117. *Pratt* v. *Tuttle*, 136 Mass. 233. *Brown* v. *Corey*, 191 Mass. 189. *Makepeace* v. *Rogers*, 4 DeG., J. & S. 649. *Sawyer* v. *Cook*, 188 Mass. 163, 165. By his acceptance it then became his duty faithfully to administer the property, to keep accounts of all expenditures, and to render an account to the plaintiffs at reasonable times with full information as to all details of his management. The bill charges that in addition to the statement contained in the accounts rendered the plaintiffs requested that the amount of insurance procured and placed on each parcel of the estate, might be further itemized by including the rates paid, and the names of the companies which issued the policies. The presiding judge having found that these corporations were solvent declined to order the defendant to disclose their identity. No satisfactory reason, however, appears why this information should not be given. The plaintiffs were entitled to a full discovery, which was not limited to the financial soundness of the insurers, to be determined by the opinion of their agent, although this opinion, upon his testimony alone, was confirmed by the court. It was the money of the plaintiffs that had been paid, and they had a right fully to explore the entire field of their agent's operations for the purpose of ascertaining whether the disbursements charged had actually been made, and this would include the premiums paid for insurance to companies of which the defendant was the local agent, and in which as far as possible he had placed the insurance.

In a suit in equity a finding of fact upon conflicting evidence, especially where the credibility of witnesses is involved, will not be reversed on appeal even if all the evidence is reported unless clearly wrong. *Poland* v. *Beal*, 192 Mass. 559. *Harvey-Watts Co.* v. *Worcester Umbrella Co.*, *ante*, 138. This rule of practice, however, has no application in the present case, for the finding of financial soundness did not involve a finding that the defend-

ant was not obliged to account further by stating the names of the companies. Such a conclusion is in the nature of a ruling of law, which for the reasons given cannot be sustained. The decree of the Superior Court must be reversed, and the case is to stand for further hearing.

*Ordered accordingly.*